[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Defendant-appellant Amanda Monigold appeals from her conviction in the Columbiana County Common Pleas Court of aggravated vehicular homicide, a violation of R.C. 2903.06(A)(2). This court is asked to determine three issues. First, whether the jury conviction was against the manifest weight of the evidence. Second, whether the state produced sufficient evidence to prove that Monigold acted recklessly in the commission of the offense. Lastly, this court must decide whether the trial court erred in failing to sentence Monigold to the minimum sentence allowable by law. For the reasons provided below, the conviction is hereby affirmed; however, due to the trial court's failure to comply with the felony sentencing statute, the sentence is vacated and the case is remanded for a new sentence hearing.
 STATEMENT OF FACTS {¶ 2} On June 30, 2002, an 18 year-old unlicensed Amanda Monigold took two of her foster brothers, Trevor Smith (12) and Tyler Ridgley (11), for a ride in a Chevy Blazer. Their destination was McCormick Run Road in Columbiana County, Ohio. McCormick Run Road is a narrow, gravel back road.
 {¶ 3} Monigold drove up McCormick Run Road and then turned around. Upon her descent down this road, the Blazer skidded off the road, and hit an embankment, which caused the vehicle to overturn. The impact of the accident caused Smith to be ejected from the vehicle and when the vehicle overturned it was partially on top of him. The injuries he sustained were fatal.
 {¶ 4} As a result of the accident, Monigold was charged with Aggravated Vehicular Homicide for recklessly causing the death of Smith while operating a motor vehicle. The case proceeded to a jury trial; Monigold was found guilty and sentenced to four years. Monigold timely appealed raising three assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 5} "The conviction of appellant upon a charge of aggravated vehicular homicide in violation of ohio revised code2309.06(A) was against the manifest weight of the evidence."
 {¶ 6} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id. at 390. Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 7} Monigold was convicted of R.C. 2903.06(A)(2), aggravated vehicular homicide. This statutory section states that no person while operating a motor vehicle shall recklessly cause the death of another.
 {¶ 8} Monigold concedes that she was operating the motor vehicle, however, she maintains that the evidence submitted at trial does not support the conclusion that she acted recklessly in causing the death of Smith. Recklessly is defined as follows:
 {¶ 9} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 10} At trial, testimony was offered concerning the manner in which Monigold was driving the Blazer on McCormick Run Road. William Tyson, driving his car down McCormick Run Road at the same time Monigold was driving on the road, stated that he observed Monigold approaching him from the rear at a high rate of speed. (Tr. 194). He pulled almost completely off the road to allow Monigold to pass him. (Tr. 194). In watching Monigold pass him, he observed the Blazer sliding back and forth in the gravel. (Tr. 195). He then testified that shortly after the Blazer had passed him, it again approached him but this time from the opposite direction. (Tr. 196). He stated that the Blazer was fishtailing sideways and sliding all over the road. (Tr. 196). Tyson had to pull his car completely off the road to avoid being hit head-on by the Blazer. (Tr. 196).
 {¶ 11} Ridgley, the eleven-year-old passenger in the Blazer, stated he told Monigold to slow down because she was going too fast and he was worried. (Tr. 262). He stated that Monigold did not slow down. (Tr. 264). Ridgley then added that Monigold was "making fishtails" by moving the steering wheel back and forth. (Tr. 265-266). He claims that when she was "fishtailing," she lost control of the Blazer and went into the embankment. (Tr. 267).
 {¶ 12} Additionally, photographs of the crime scene and the field sketch were admitted into evidence. This evidence shows the markings of where the vehicle traveled prior to coming to its final resting spot. Trooper Kelvington, the officer who drew the field sketch, estimated that the Blazer skidded 180 feet prior to leaving the roadway, and then skidded another 90 feet before stopping. (Tr. 350). Thus, from the first evidence of braking, the Blazer skidded 270 feet before it stopped. (Tr. 250).
 {¶ 13} However, Monigold's testimony contradicted the above testimony. Monigold testified that she was not driving too fast down McCormick Run Road given that the speed limit was 55 mph and she was only going between 35 and 45 mph. (Tr. 438). She stated that she was not sliding on the road and that she was not jerking the wheel back and forth. (Tr. 414-415). She claims the accident happened because two deer ran out in front her,[1] and when she swerved to miss the deer, the Blazer slid off the road. (Tr. 419).
 {¶ 14} Monigold argues that it cannot be determined that she was driving recklessly because there was no evidence presented as to her actual speed. We find this argument unpersuasive. While there may not have been testimony, other than Monigold's, as to how many miles per hour she was traveling, there was, as stated above, testimony that she was driving fast. Besides Tyson and Ridgley's testimony, evidence indicated that the Blazer skidded 270 feet from the point of first braking until it came to a rest. Thus, the jury may have disbelieved her assertion that she was only traveling between 35 to 45 mph, and instead believed that the vehicle would not have skidded this far if she was traveling at that rate of speed.
 {¶ 15} Moreover, even if the jury believed her assertion, the fact that a person is driving under the speed limit does not mean that the person is not driving recklessly. Speed limits permit a driver to operate their car up to a certain speed, however, that does not mean in all conditions it is safe to travel at the speed limit. For example, the speed on many highways is 65 mph and it is safe to travel at that speed when the road conditions are good. However, during a winter storm that causes the roads to be extremely icy, it is not safe to travel 65 mph. If a person does decide to travel at that speed, even though they arecontinually sliding across the road, and causes an accident, they may be acting with heedless indifference to a known risk.
 {¶ 16} In the case at hand, McCormick Run Road is a back road. By all accounts, it is a loose gravel, narrow country road. At 3:00 p.m. on June 30, 2003, the time and day of the accident, it was 88 degrees, sunny and warm. Given this, it can be concluded that the road was not wet or icy. However, the condition of the road is loose gravel. Loose gravel roads could cause a vehicle to slide if the vehicle is traveling too fast.
 {¶ 17} Likewise, when a person is moving the steering wheel back and forth on this type of road it may cause the vehicle to slide. Testimony indicated that she was sliding and fishtailingup and down McCormick Run Road. At the point that the vehicle began fishtailing and sliding across the road, the risk of losing control of the vehicle and wrecking became known. Continuing to drive in a manner that allowed the vehicle to fishtail and slide was disregarding the known risk. Thus, regardless of whether that person was driving under the speed limit, that person should have slowed down. From the testimony, it appears that 11 year-old Ridgley realized this and asked Monigold to slow down. However, the testimony indicates that she did not slow down, nor did she stop causing the Blazer to fishtail. Consequently, the manner in which she was driving up and down McCormick Run Road could logically lead a reasonable jury to conclude that she was acting recklessly.
 {¶ 18} Next, Monigold argues that the evidence does not establish that her recklessness caused Smith's death. Monigold cites State v. Vaught (1978), 56 Ohio St.2d 93 (a case dealing with sufficiency of the evidence, not manifest weight of the evidence) in support of this proposition.
 {¶ 19} In Vaught, a motorist turning right at a stoplight hit a child crossing the street in a crosswalk. At the time the motorist was turning, the stoplight was yellow. The Vaught
court stated that if "appellant was speeding and that the speed caused him to strike the victim at a time when the victim has the right of way to cross Mound Street — the case was properly submitted to the jury and the conviction should be sustained." Id. at 95. The court went on to explain that if the appellant had reached the point where the accident occurred before the stoplight turned red, then the conviction must be overturned. Id. Since the testimony at trial revealed that the light was yellow when the accident occurred, the conviction for vehicular homicide had to be overturned.
 {¶ 20} Despite Monigold's insistence, Vaught does not support the conclusion that her conviction is against the manifest weight of the evidence. Vaught states that the operation of the vehicle must be the direct and proximate cause of the death. Id. at 94. In Vaught, the evidence submitted was insufficient to prove that appellant's alleged speeding was the direct and proximate cause of the pedestrian's death, when evidence indicated that the pedestrian entered the crosswalk prior to having the right of way. In the matter at hand, the accident resulted from Monigold losing control of the vehicle. From the testimony given at trial, the jury could conclude that this loss of control was either caused by her driving too fast, by her act of moving the steering wheel back and forth thereby causing the vehicle to fishtail, or by a combination of both. All three of these possible causes are directly related to the manner in which she was driving. Therefore, we cannot conclude, given all the evidence submitted at trial, that the jury clearly lost its way by finding that the operation of the vehicle was the direct and proximate cause of Smith's death.
 {¶ 21} Accordingly, the conviction is not against the manifest weight of the evidence. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 22} "The trial court erred in not granting appellant's motions for judgment of acquittal pursuant to ohio rule Crim.P. [sic] 29(A) where the state failed to introduce evidence in support of the element recklessness as required by R.C. section2903.06."
 {¶ 23} Monigold moved for acquittal pursuant to Crim.R. 29 at the close of the state's case arguing that the state failed to produce sufficient evidence to prove that she acted recklessly. (Tr. 393-395). The trial court denied the motion. (Tr. 395). Monigold later renewed the motion for acquittal again arguing that the state failed to produce sufficient evidence to prove that she acted recklessly. (Tr. 458). The trial court overruled the motion. (Tr. 458). Monigold now argues that the trial court's rulings were erroneous.
 {¶ 24} We review the denial of a Crim.R. 29 motion for acquittal under the same standard that appellate courts use to review a sufficiency of the evidence claim. State v. Rhodes, 7th Dist. No. 99 BA 62, 2002-Ohio-1572, at ¶ 9; State v.Carter, 72 Ohio St.3d 545, 553, 1995-Ohio-104. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. Statev. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355. In essence, sufficiency is a test of adequacy. Thompkins,78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith,80 Ohio St.3d at 113.
 {¶ 25} As stated under the first assignment of error, the state offered testimony from Tyson and Ridgley as to the manner in which Monigold was operating the Blazer. Tyson and Ridgley both testified that Monigold was going fast and the vehicle was fishtailing and sliding across the road. (Tr. 194-196, 262, 264-265, 267). Tyson testified that not only was she going fast, fishtailing, and sliding across the road the first time she passed him, but she was also going fast, fishtailing, and sliding across the road the second time she passed him. (Tr. 194-196).
 {¶ 26} This testimony was sufficient to sustain the verdict. As explained earlier, the manner in which she was driving could be deemed reckless. A jury could conclude that once the vehicle began fishtailing and sliding across the road, the risk of losing control of the vehicle became known. Therefore, given Tyson's testimony that not only did she drive in this manner up McCormick Run Road, but that she also continued to drive this way back down McCormick Run Road, a reasonable jury could find that she was acting in heedless disregard of the known risk. Thus, when viewing the evidence in the light most favorable to the state, a rational trier of fact could have concluded that Monigold was acting recklessly. Hence, the trial court did not error in denying the Crim.R. 29 motion and renewed motion for acquittal. This assignment of error also lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 27} "The trial court abused its discretion when the court sentenced appellant to four years on her first felony conviction without setting forth reasons on the record for doing so."
 {¶ 28} Monigold was convicted of violating R.C.2903.06(A)(2), aggravated vehicular homicide, a third degree felony. R.C. 2929.14(A)(3) states that a prison term for a third degree felony shall be one, two, three, four or five years. Monigold was sentenced to four years.
 {¶ 29} Monigold argues that she is entitled to the R.C.2929.14(B) presumption that the shortest authorized prison term was appropriate, due to the fact that this was her first felony conviction. In reviewing an alleged sentencing error, our standard is not whether the trial court abused its discretion, but rather, whether the record does not clearly and convincingly support the record or that the sentence is contrary to law. R.C.2953.08(G)(2). An appellate court has the authority to increase, reduce, or otherwise modify a sentence, or vacate and remand the matter to the sentencing court for resentencing, if it finds either of the above. Id.
 {¶ 30} R.C. 2929.14(B), in pertinent part, reads as follows:
 {¶ 31} "* * * [T]he court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 32} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 33} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 34} Thus, "[p]ursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first-time offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph two of the syllabus. In State v.Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110, which is cited inComer, supra, at 469, the Ohio Supreme Court gave the following guidance: `By contrasting this statute [R.C. 2929.14(B)] with other related sentencing statutes, we deduce that the verb "finds" as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons.' Id. at 326." State v. DeMastry, 5th Dist. No. 02CA9, 2003-Ohio-5588, at ¶ 27.
 {¶ 35} Here, the record is devoid of any indication that Monigold was either currently serving a felony conviction or that she had previously served a felony conviction. Rather, the record confirms that this was her first felony conviction. Thus, she was entitled to the minimum sentencing presumption if the trial court did not find on the record that the shortest prison term would demean the seriousness of the offense or it would not adequately protect the public. R.C. 2929.14(B)(2).
 {¶ 36} However, the trial court failed to make either of these required findings on the record, i.e. at the sentencing hearing. The record is completely devoid of even a minimal attempt at making either of these findings. The trial court's half page statement made during sentencing merely states what her sentence is, that she will be subject to post release control, and that she has the right to appeal. (Sentencing Tr. 8-9).
 {¶ 37} Having made none of the required findings, variance from the minimum was in error. State v. Weaver,141 Ohio App.3d 512, 519, 2001-Ohio-3216, citing Edmonson,86 Ohio St.3d at 326. Accordingly, this assignment of error has merit and, thus, the sentence must be vacated and the case remanded for a new sentencing hearing.
 {¶ 38} For the foregoing reasons, appellant's conviction is hereby affirmed. The sentence, however, is vacated and this case is remanded to the trial court for a new sentencing hearing.
Waite, P.J., and Donofrio, J., concur.
[1] Ridgley originally told Sergeant Lenkey from the Ohio State Highway Patrol that the cause of the accident was two deer, thereby confirming Monigold's version of the events. (Tr. 274). However, within hours of making that statement, Ridgley told Trooper Kelvington, another investigating officer from the Ohio State Highway Patrol, that he had lied and that in fact there were no deer. (Tr. 274, 355-357). Ridgley then explained that Monigold told him to tell the officers that there were two deer and if he did not say that there were deer he would get taken away from his mother. (Tr. 273-274, 361).
Monigold does not argue that the change in Ridgley's story rendered the verdict against the manifest weight of the evidence. However, even if this argument was made it would fail since witness credibility is primarily a question for the trier of fact. DeHass, 10 Ohio St.2d 230. This is because the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility" of the testimony.State v. Swartsell, 12th Dist. No. CA2002-06-151, 2003-Ohio-4450, at ¶ 34, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Thus, the jury could have concluded even though Ridgley's version of the events of the accident had changed, he was a more credible witness than Monigold, especially when considering why he originally lied.