The STATE of Ohio, Appellee,

v.

PECK, Appellant.

[Cite as *State v. Peck*, 172 Ohio App.3d 25, 2007-Ohio-2730.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–500.

Decided June 5, 2007.

26

Ron O'Brien, Franklin County Prosecuting Attorney, and Kimberly M. Bond, Assistant Prosecuting Attorney, for appellee.

Robert F. Krapenc, for appellant.

KLATT, Judge.

{¶ 1} Defendant-appellant, William L. Peck, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. Because appellant's conviction is not supported by sufficient evidence, we reverse that judgment and enter judgment for appellant.

{¶ 2} On the evening of January 13, 2005, Charles Starkes was driving a tractor-trailer (a tractor with two attached trailers) on I-270 near Columbus, Ohio. His tractor weighed about 34,000 pounds and his two trailers were loaded with almost 30,000 pounds of materials, for a combined weight of almost 64,000 pounds, or 32 tons.

{¶ 3} Starkes accidentally drove his tractor-trailer into the freeway's median and became stuck in the mud. He called for a tow. Appellant, who worked for a towing company in Columbus, responded to the scene in a tow truck. Appellant had almost ten years of towing experience. Starkes told appellant how much weight he had in his two trailers. Appellant told Starkes that his tow truck was too small and that a heavy tow truck was on the way. Appellant called Derick Lane and asked him to bring the company's heavy tow truck. A half an hour later, Lane arrived at the scene with the heavy truck. Lane parked the heavy tow truck on the left berm lane of the freeway, about 100 feet in front of Starkes's tractor-trailer. Appellant parked his small tow truck partially in the left lane of the freeway behind Starkes's tractor-trailer, with his lights flashing to alert oncoming drivers.

{¶ 4} Appellant began to set up the tow. He extended two braces from the back of the heavy tow truck to add stability. He took a securement chain from the heavy truck and placed it in the recovery hooks on the front of Starkes's tractor-trailer. Appellant removed a "snatch block" (basically a large pulley with an attached hook) from the heavy tow truck and hooked it to the rear of the heavy tow truck. Appellant examined the snatch block to make sure it was not cracked, but he did not check the capacity rating of the snatch block. Snatch blocks are rated for capacities of two to 24 tons. Appellant then ran the cable from the heavy tow truck's boom down through the snatch block and then out to the tractor-trailer, where he attached the cable to the securement chain. The snatch block that appellant used was rated at three tons and it was the only snatch block on the heavy tow truck when it was brought to the scene. Appellant testified that he assumed this snatch block was appropriate for the job because it was the only one provided with the heavy tow truck.

{¶ 5} After connecting the cable to the securement chain, appellant went to the controls located on the outside of the heavy tow truck and began to tighten the cable in preparation for pulling the tractor-trailer out of the median. Appellant

visually inspected the cable going back to the tractor-trailer to see if everything was in good condition. He did not see or hear anything that caused him to believe something was wrong. However, as he applied more pressure to the cable, the heavy tow truck slid back toward the tractor-trailer a few feet. In response, Lane got inside the heavy tow truck and applied the brakes to help hold it in place. Appellant then reapplied pressure to the cable to start the pull. Within a few seconds, the snatch block broke and catapulted away from the heavy tow truck. The snatch block crashed through the windshield of a passing car driven by Danielle Knapp. Ms. Knapp was killed as a result of this tragic incident.

{¶ 6} A Franklin County Grand Jury indicted appellant on one count of reckless homicide in violation of R.C. 2903.041. Appellant entered a not-guilty plea and proceeded to a bench trial. At trial, the state presented testimony from two witnesses, William McQuirt and Stacy Wills, who own towing companies in Columbus. They both testified that appellant should not have used the snatch block at issue because it was underrated for such a heavy tow. Specifically, they stated that they would not have used the snatch block appellant used and they would have used more than one snatch block. Appellant testified that he did not check the snatch block's capacity rating before using it. Nor did he realize that the snatch block might fail. He simply assumed that it was the appropriate snatch block to use because it was on the heavy tow truck. The trial court found appellant guilty of reckless homicide and sentenced him accordingly.

{¶ 7} Appellant appeals and assigns the following error:

Defendant–Appellant's conviction for reckless homicide is not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. amend. V and XIV; or, alternatively, is against the manifest weight of the evidence.

{¶ 8} Appellant first contends that his conviction was not supported by sufficient evidence. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Supreme Court of Ohio described the role of an appellate court presented with a challenge to the sufficiency of the evidence:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Id., at paragraph two of the syllabus.

{¶ 9} Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Indeed, in

determining the sufficiency of the evidence, an appellate court must "give[ ] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 240, 767 N.E.2d 216; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; *Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶ 10} In order to convict appellant of reckless homicide, the state had to prove beyond a reasonable doubt that appellant recklessly caused Knapp's death. R.C. 2903.041. A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result." R.C. 2901.22(C). A risk is defined as a strong probability, as contrasted with a remote probability, that a certain result may occur. R.C. 2901.01(A)(7). Thus, the state had to prove that appellant, with heedless indifference to the consequences, perversely disregarded a known risk that his conduct was likely to cause a certain result.

{¶ 11} " ' "A person is said to be reckless under the section when, without caring about the consequences, he obstinately disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to exist." ' " *Bexley v. Selcer* (1998), 129 Ohio App.3d 72, 77, 716 N.E.2d 1220, quoting *State v. Pack* (1996), 110 Ohio App.3d 632, 636, 674 N.E.2d 1263, quoting Legislative Service Commission Comment to R.C. 2901.22.

{¶ 12} A mere failure to perceive or avoid a risk, because of a lack of due care, does not constitute reckless conduct. *Columbus v. Akins* (Sept. 27, 1984), Franklin App. No. 83AP–977, 1984 WL 5923. Instead, one must recognize the risk of the conduct and proceed with a perverse disregard for that risk. *State v. Covington* (1995), 107 Ohio App.3d 203, 206, 668 N.E.2d 520; *State v. Whitaker* (1996), 111 Ohio App.3d 608, 613, 676 N.E.2d 1189 (noting that to be reckless, "one must act with full knowledge of the existing circumstances").

{¶ 13} In contrast to the actor who proceeds with knowledge of a risk, the failure of a person to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature is negligence. R.C. 2901.22(D). Recklessness requires more than ordinary negligent conduct. The difference between the

terms "recklessly" and "negligently" is normally one of a kind, rather than of a degree. "Each actor creates a risk of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it." (Emphasis sic.) Wharton's Criminal Law (15th Ed.1993) 170, Section 27; see, also, *State v. Wall* (S.D.1992), 481 N.W.2d 259, 262.

{¶ 14} Appellant contends that the state failed to prove that he acted recklessly because it did not present sufficient evidence demonstrating that he perversely disregarded a known risk that his conduct was likely to cause a certain result. We agree.

{¶ 15} Preliminarily, we note that the parties do not agree on what risk we must assess in determining whether there was sufficient evidence to support the conviction for reckless homicide. The state contends that appellant perversely disregarded the general risk of equipment failure when he attempted to tow the tractor-trailer. Because there was evidence that appellant was aware of the general risk of equipment failure during a tow, the state argues there was sufficient evidence to establish the necessary element of knowledge for a finding of reckless conduct. Appellant contends, however, that we must examine the specific risk associated with snatch-block failure under these circumstances and appellant's knowledge of that risk, in determining whether his conduct was reckless. Correctly identifying the nature of the risk is critical in determining whether appellant's conduct was reckless.

{¶ 16} Although not always clearly articulating the distinction between a general risk and a specific risk, Ohio courts seem to look at the specific risk created by the defendant's conduct, rather than the general risk inherent in the activity, in assessing whether a defendant's conduct was reckless. For example, although driving an automobile is always inherently dangerous and the risks are well known, courts have focused on the heightened risks created by the defendant's specific conduct, and the defendant's knowledge of those risks, in determining criminal liability. See *State v. Monigold,* Columbiana App. No. 03 CO 25, 2004-Ohio-1554, 2004 WL 614989, at ¶ 17 (reckless conduct not simply driving, but continuing to drive in a manner that allowed the car to fishtail and slide by moving steering wheel back and forth); *State v. Gayheart* (Sept. 8, 1997), Warren App. No. CA97–01–001, 1997 WL 563270 (speeding and driving on the wrong side of road); *State v. Smith* (Oct. 20, 1997), Warren App. No. CA96–09–186, 1997 WL 658932 (driving overloaded dump truck through red light at a congested intersection); *State v. Wasson,* Franklin App. No. 02AP–211, 2002-Ohio-5963, 2002 WL 31429760, at ¶ 29 (speeding in vehicle that may have had mechanical problems on narrow residential street in neighborhood crowded with people); *State v. Wade* (Apr. 13, 1995), Cuyahoga App. No. 67206, 1995 WL 229110 (running a red light, at night, in the rain, at 50 to 60 miles per hour, in a well-traveled area); Cf. *State*

*v. Wright,* Scioto App. No. 01CA2781, 2002-Ohio-1462, 2002 WL 1666223 (shooting a gun into inhabited area in general direction of two unprotected areas from a distance of only two to 20 feet).

{¶ 17} We agree with appellant that a court must assess the defendant's knowledge of the specific risk created by the defendant's conduct, not the defendant's knowledge of the general risk inherent in the activity, in determining criminal liability for reckless homicide. Otherwise, there could be criminal liability for even negligent conduct whenever the defendant is aware that he is engaged in an inherently dangerous activity. See, also, *People v. Hall* (Colo. 2000), 999 P.2d 207, 218 (noting that a court "must inquire beyond the general nature of the defendant's conduct and consider the specific conduct in which the defendant engaged"); *State v. Salz* (1993), 226 Conn. 20, 627 A.2d 862, 868.

{¶ 18} In the present case, appellant was attempting to pull a tractor-trailer out of the median. That activity is inherently dangerous. The specific conduct, however, that caused the risk of harm in this case was his use of a snatch block that was not capable of handling the stresses created by the pull. See id. (relevant conduct not installing a heater but improperly wiring the heater during installation). The risk created by this specific conduct was that the snatch block would fail as appellant attempted to pull the tractor-trailer out of the median.

{¶ 19} Having determined the risk that appellant's specific conduct created, we must next determine whether the state presented sufficient evidence to find that the appellant was aware of this risk, because he can be reckless only if he perversely disregarded a known risk. R.C. 2901.22(C).

{¶ 20} On this issue, the state presented testimony from two witnesses with extensive experience in the towing industry. They both testified that the snatch block appellant used was not designed for such a heavy tow and that they would not have used it on this tow. They both would have performed the tow in a different manner, using multiple, higher-rated snatch blocks. Both testified that the method they would have used to set up the tow was based on their towing experience. McQuirt explained that if he was towing the tractor-trailer that night and only had available the snatch block appellant used, he would not have performed the tow because he "would know better."

{¶ 21} However, we note that McQuirt also testified that there would be no warning that a snatch block was going to break and that he was surprised this one broke. He also testified that he could not believe anyone standing outside of the tow truck would use the snatch block knowing that it might break because they could easily be injured. Additionally, Wills testified that it was very unusual to have a snatch block fail and that he had never had a snatch block fail. In fact, Wills testified that if too much pressure is being applied, the tow is designed to

stop before something breaks. Both McQuirt and Wills also testified that two snatch blocks that are the same size can have different ratings and that some snatch blocks they use do not have ratings marked on them.

{¶ 22} The state's evidence is insufficient to demonstrate that appellant knew of the risk that the underrated snatch block would fail as he attempted to pull the tractor-trailer. Although both expert witnesses testified that they would not have used this snatch block to pull the tractor-trailer, they did not testify about any specific industry standards. Both witnesses expressed surprise that the subject snatch block failed. Appellant admitted he had ten years of towing experience but had not received any formal training. His knowledge came from his job experience. He testified that he had no idea this snatch block would fail. In fact, he had never heard of a snatch block breaking before. Nor did he get any warning before this snatch block failed. He did not look at the snatch block's rating but knew that he had used it before to help tow a heavy barge. The snatch block at issue was the only snatch block on the heavy tow truck, so appellant assumed it was capable of pulling a heavy tractor-trailer. The state failed to present evidence that appellant (1) knew the snatch block's capacity rating, (2) knew a snatch block could break, (3) knew the snatch block he was using might break, or (4) knew that it was important to check the capacity rating of a snatch block before using it. In the absence of such evidence, the state failed to present sufficient evidence that with heedless indifference to the consequences, appellant perversely disregarded a known risk that his conduct was likely to cause a certain result. R.C. 2901.22(C).

{¶ 23} The question in this case is not whether appellant was negligent for using the snatch block, but whether there was sufficient evidence that he was criminally reckless when he used the snatch block. The state presented sufficient evidence that appellant should not have used the snatch block at issue. That evidence, however, tends to prove that appellant acted negligently, not recklessly. A reckless actor acts with knowledge of the risk and perversely disregards that risk. For the reasons discussed above, the state failed to present sufficient evidence to prove that appellant knew the risks created by his conduct. Because appellant did not know the rating of the snatch block, and because he was unaware of the risk associated with using a snatch block without checking its rating, he was ignorant of the risk that the snatch block would fail. See *Hamilton v. State* (Del.2003), 816 A.2d 770, 774 (because defendants did not know of woman's pregnancy, they could not have recklessly caused the death of the unborn child).

{¶ 24} We recognize that in some instances it may be reasonable to infer knowledge based on the evidence presented. *State v. Caton* (2000), 137 Ohio App.3d 742, 753, 739 N.E.2d 1176. However, the state did not present sufficient

evidence in this case that would support an inference of knowledge. Simply because two other tow truck operators would not have used the snatch block in question is not sufficient to prove that appellant perversely disregarded a known risk (failure of the snatch block) that his use of this snatch block was likely to cause a certain result.

{¶ 25} This case is distinguishable from the lone case cited by the state to support the proposition that appellant acted recklessly. In *State v. Laub* (1993), 86 Ohio App.3d 517, 621 N.E.2d 585, a mechanic drove a car that was not roadworthy and caused an accident that killed a child. The court found sufficient evidence to show that Laub was reckless, given his education and experience as a mechanic and the condition of the car. Laub's conduct in driving the unroadworthy car created a risk that an accident would occur. Laub admitted his knowledge of that risk, at least implicitly, by admitting he thought he could compensate for the car's problems. Laub's knowledge of the risk his conduct created distinguishes that case from the present matter, in which the state failed to show that appellant was aware of the risk his conduct created.

{¶ 26} Appellant's conviction for reckless homicide is not supported by sufficient evidence. Accordingly, appellant's lone assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and judgment is entered in favor of appellant. See *State v. Davis* (Apr. 18, 2002), Franklin App. No. 01AP–579, 2002 WL 576077, citing *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541; see, also, *State v. York* (May 1, 1998), Lake App. No. 97–L–037, 1998 WL 257055 (conviction reversed and judgment entered in favor of defendant where state failed to present sufficient evidence to prove reckless conduct).

Judgment reversed.

FRENCH and McGRATH, JJ., concur.