[Cite as *State v. Mason*, 2024-Ohio-2290.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 23CR139 |
| | : | |
| BRIAN E. MASON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 14, 2024

. . . . . . . . . . .

JOE CLOUD, Attorney for Appellant

PAUL M. WATKINS, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Brian E. Mason appeals from his convictions for reckless homicide and having weapons while under disability. For the reasons set forth below, we affirm in part, reverse in part, and remand for resentencing.

## I. Factual and Procedural History

{¶ 2} At approximately 6:30 p.m. on March 27, 2023, Mason approached a Miamisburg police officer and informed the officer that he had shot a woman accidentally the previous night. It was determined that the shooting had occurred at a residence in Miami County. West Milton police officers and Miami County Sheriff's deputies were dispatched to the residence to conduct a welfare check. After looking through a window and noticing blood, the officers and deputies made a forced entry into the residence and located Michelle Elliott, who was deceased, laying face down on the floor with a blanket over her body.

{¶ 3} Following an investigation, Mason was charged by indictment with one count of reckless homicide. A superseding indictment was later filed charging Mason with one count of reckless homicide in violation of R.C. 2903.041(A)/(B) and having weapons while under disability in violation of R.C. 2923.13(A)(3)/(B). The count of reckless homicide had an attendant three-year firearm specification.

{¶ 4} The matter proceeded to a jury trial. The jury convicted Mason of both offenses and the firearm specification. The trial court sentenced Mason to a prison term of 36 months on the reckless homicide and to a mandatory 3-year prison term on the firearm specification, to be served prior and consecutively with the sentence for reckless homicide. The trial court also imposed a 24-month prison term for having weapons while under disability. The trial court ordered the sentences to run consecutively for a "total of eight (8) years confinement, with six (6) years being mandatory prison time."

{¶ 5} Mason appeals.

## II.	Sentencing

{¶ 6} Mason asserts the following as his first assignment of error:

THE TRIAL COURT'S IMPOSITION OF A MANDATORY SENTENCE ON

THE RECKLESS HOMICIDE CONVICTION WAS CONTRARY TO LAW.

{¶ 7} Mason contends the trial court erred in sentencing.   Specifically, he objects to that portion of the trial court's judgment entry which stated, "on Count 1 [reckless homicide] Defendant is to be confined in the Ohio Department of Rehabilitation and Corrections for a mandatory period of thirty-six months (36), pursuant to [R.C.] 2929.13(F)(8)."   He contends that by making the 36-month term mandatory, the trial court has prevented him from seeking any time reductions as provided for in R.C. 2929.23 (judicial release) and R.C. 2967.193-.194 (good time credit).

{¶ 8} R.C. 2929.13(F)(8) provides:

Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to 2929.06, section 2929.14, section 2929.142, or section 2971.03 of the Revised Code and except as specifically provided in section 2929.20, or section 2967.191 of the Revised Code or when parole is authorized for the offense under section 2967.13 of the Revised Code shall not reduce the term or terms pursuant to section 2929.20, division (A)(2) or (3) of section 2967.193 or 2967.194, or any other provision of Chapter 2967. or Chapter 5120. of the Revised

Code for any of the following offenses:

* * *

Any offense, other than a violation of section 2923.12 of the Revised Code, that is a felony, if the offender had a firearm on or about the offender's person or under the offender's control while committing the felony, with respect to a portion of the sentence imposed pursuant to division (B)(1)(a) of section 2929.14 of the Revised Code for having the firearm[.]

{¶ 9} In *State v. Shields*, 2d Dist. Montgomery No. 28573, 2020-Ohio-3204, we held that when a defendant is convicted of both a felony offense and an attendant firearm specification, R.C. 2929.13(F)(8) requires the court to impose a sentence on the underlying felony conviction and prevents the court from considering community control for that felony conviction. *Id.* at ¶ 11.

{¶ 10} Mason concedes the trial court was required to impose a prison term for the reckless homicide conviction under R.C. 2929.14(A)(3)(b). He also concedes the trial court was required by R.C. 2929.14(B)(1)(a)(ii) to impose a mandatory three-year prison sentence for the firearm specification, to be served prior and consecutive to the sentence for the underlying offense of reckless homicide. However, he argues that the trial court erred by stating that R.C. 2929.13(F)(8) requires mandatory service of the entire 36-month prison sentence imposed for the reckless homicide conviction. We agree.

{¶ 11} Our holding in *Shields* states that R.C. 2929.13(F)(8) merely eliminates a trial court's ability to impose community control for a felony offense involving a firearm. The prison term for third-degree felonies is set forth in R.C. 2929.14(A)(3)(b), which

provides for a range of possible sentences from nine to 36 months. That statute does not set forth a requirement that whatever term is imposed be served in its entirety. Likewise, *Shields* does not mandate that the offender be required to serve the entirety of the sentence imposed. Therefore, although the trial court correctly imposed a prison sentence on the reckless homicide count, it erred by designating the prison term a mandatory term.

{¶ 12} Accordingly, the first assignment of error is sustained.

### III. Sufficiency

{¶ 13} The second assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT OVERRULED THE DEFENDANT'S C.R. 29 MOTION FOR ACQUITTAL.

{¶ 14} Mason contends that the trial court should have sustained his Crim.R. 29 motion for acquittal on the reckless homicide count.

{¶ 15} "A Crim.R. 29 motion for judgment of acquittal challenges the legal sufficiency of the evidence." *State v. Turic*, 2d Dist. Montgomery No. 21453, 2006-Ohio-6664, ¶ 13, citing *State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 40. "When considering such a motion, a trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions about whether the evidence proves each element of the offense charged beyond a reasonable doubt." *Id.* at ¶ 13. "If a rational trier of fact could find the essential elements of the crime to be proven beyond a reasonable doubt, a defendant is not entitled

to acquittal under Crim.R. 29." *Id.*, citing *Carter* at ¶ 41.

{¶ 16} Mason was convicted of reckless homicide in contravention of R.C. 2903.041(A), which states, in pertinent part, that "[n]o person shall recklessly cause the death of another * * *." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C). "Substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 17} Mason argues that the evidence demonstrates his actions constituted mere negligence and that the State did not present evidence sufficient to prove he acted recklessly in handling the weapon.

{¶ 18} Recklessness requires more than ordinary negligent conduct. "A mere failure to perceive or avoid a risk, because of a lack of due care, does not constitute reckless conduct." *State v. Leannais*, 8th Dist. Cuyahoga No. 107167, 2019-Ohio-2568, ¶ 23, quoting *State v. Peck*, 172 Ohio App.3d 25, 2007-Ohio-2730, 872 N.E.2d 1263 (10th Dist.). "Instead, one must recognize the risk of the conduct and proceed with a perverse disregard for that risk." *Id.* "The difference between the terms 'recklessly' and 'negligently' is normally one of a kind, rather than of a degree. 'Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is

not aware of the risk but should have been aware of it.'" *Peck* at ¶ 13, quoting Wharton's Criminal Law (15th Ed.1993) 170, Section 27.

{¶ 19} Mason testified that the victim, Elliott, had asked him about having a weapon for personal safety. He testified he did not think the firearm she owned was sufficiently powerful to stop a person, so he intended to provide her with another gun. Mason took a semi-automatic pistol to Elliott's home.[1] Mason testified that he removed the gun from its case and began to teach Elliott how to use it. According to Mason, Elliott was seated on the couch in the living room, and he was standing approximately three feet away from her. He testified that he began to show her the different parts of the gun and, while doing so, he was holding the gun pointed away from Elliott with the barrel pointed downward. Mason demonstrated how to insert the ammunition magazine into the gun and how to load a round into the firing chamber. He testified that when he realized there was a bullet in the firing chamber, he immediately stopped the demonstration to pull the magazine out. According to Mason's testimony, he placed his left hand around the body of the gun and put his right hand around the magazine to try to pull it out, but the magazine "was tight, and it was stuck; it wouldn't release." Tr. p. 81. He then "flipped" the gun up to look at the release button for the magazine while, at the same time, pulling on the magazine. He stated that "[i]n that motion, is when I pulled the gun towards [Elliott]." *Id.* He then heard the gun discharge. He testified that he was "shocked" because he did not know how the gun had fired. He testified he had not touched the trigger guard or the trigger. However, during a police interview, Mason indicated he may have brushed the

---

[1] According to the record, the weapon was a pistol with an "assault rifle frame."

trigger.

{¶ 20} Mason further testified that he was very familiar with guns; he was young when he began hunting with his dad and had been around, handled, and used guns his entire life. Mason obtained a concealed carry permit (CCW) after completing ten hours of classroom gun safety instruction and two hours of range time. He maintained his CCW license until it was revoked in 2012 due to a felony drug conviction. Mason testified that he had "preached" gun safety his entire life and admitted that he had had a "substantial lapse of due care" when he shot Elliott.

{¶ 21} The State presented the testimony of Kelsey Cramer, a forensic firearm scientist who worked for the Ohio Bureau of Criminal Identification and Investigation. Cramer testified that she examined Mason's gun following the shooting. According to Cramer, the gun was operable and in good working condition. She testified it was clean with no rust or debris; no defects or malfunctioning components were observed. Cramer testified that the gun was incapable of firing when its safety mode was engaged. She further testified that she put the firearm through a battery of tests attempting to make it discharge without pulling the trigger. However, even after she hit the gun in various areas with a mallet, she was unable to make the gun discharge without pulling the trigger.

{¶ 22} "[A] firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death' when fired at an individual." *State v. English*, 10th Dist. Franklin No. 13AP-88, 2014-Ohio-89, ¶ 11, quoting *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). Viewing the evidence in a light most favorable to the prosecution, we conclude the evidence established that Mason was aware of the risks

posed by the firearm. Further, he was well-versed in firearm safety principles and fundamentals. The evidence demonstrated that he was standing in close proximity to Elliott while he attempted to manipulate the magazine from the gun, knowing there was a bullet in the firing chamber. Mason admitted that he had difficulty trying to remove the magazine and that, while he was attempting to do so, he flipped the gun toward Elliott. Although Mason claimed he did not pull the trigger, he informed an investigating officer that he may have brushed the trigger. Further, the State's firearms examiner testified that the gun would not have fired had the safety been on and otherwise would not have discharged without pulling the trigger.

{¶ 23} Based upon this record, we conclude that the trial court did not err in denying the Crim.R. 29 motion for acquittal. The State presented evidence which provided a reasonable basis for finding that Mason was aware of the risk posed by the gun and, despite this knowledge, he acted with heedless indifference to the consequences of his own handling of a loaded gun.

{¶ 24} The second assignment of error is overruled.

### IV.    Exclusion of Evidence

{¶ 25} Mason's third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE DEFENDANT'S MOTION TO EXCLUDE PREJUDICIAL PHOTOGRAPHS.

{¶ 26} Mason contends the trial court abused its discretion in admitting, over his

objection, State's Exhibits 53 through 58, which were pictures taken during Elliott's autopsy. Specifically, he argues that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice due to their gruesome nature.

{¶ 27} The admission or exclusion of evidence such as photographs is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Morales*, 32 Ohio St.3d 252, 257, 513 N.E.2d 267 (1987*); State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 122. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 28} During trial, the State presented the testimony of Anna Richmond, M.D., a forensic pathologist at the Montgomery County Coroner's Office. Richmond performed an autopsy on Elliott. During her testimony, Richmond referred to the photographs to which Mason objected. Richmond testified that the pictures were taken under her direction and control and that they were being used to assist her in her explanation of the

injuries observed and the findings made during the autopsy.

{¶ 29} Exhibit 53 was a picture of Elliott's scalp pulled back from her skull. The record shows that, when she collapsed, the left side of Elliott's face was to the floor. Exhibit 53 was used to show internal bruising to the left side of the skull. According to Richmond's testimony, this picture showed a hemorrhage and bruising which demonstrated that Elliott was still alive when the hemorrhage occurred. Exhibit 54 was a picture of Elliott's heart. Richmond testified that the picture demonstrated that the bullet had passed through the heart causing damage to the right upper chamber and the right coronary artery. Exhibits 54 and 55 were two different views of Elliott's liver. Richmond testified the pictures showed the bullet caused "significant injury" to the liver. Exhibit 57 was a picture of Elliott's right lung. Richmond testified to the damage the bullet caused to that lung. Finally, Exhibit 58 was a picture of Elliott's right kidney, which Richmond testified was "extremely" injured when it was lacerated and pulverized by the bullet.

{¶ 30} "Autopsy photos are inherently prejudicial when they depict gruesome, graphic wounds, but when offered to prove elements of the offense that the State has the burden of proving, they are usually not unfairly prejudicial." *State v. Wade*, 2d Dist. Montgomery No. 21530, 2007-Ohio-1060, ¶ 35. In this case, the State had the burden of proof to show, beyond a reasonable doubt, that Mason's actions caused Elliott's death. The pictures were used to support Richmond's testimony that the bullet passed through the chest wall and fractured two ribs before travelling downward through the heart and right lung, down to the liver and kidney, before eventually exiting the body through the

lower right side of her back. Richmond testified the "bullet wound injuries were catastrophic and significant" and were the cause of Elliott's death.

**{¶ 31}** We conclude that the trial court properly admitted the autopsy photographs at issue in this case because it helped the jury to understand Richmond's testimony regarding the cause of Elliott's death, and the photographs were relevant and probative of the allegation that Mason caused her death by shooting her in the chest. The photographs, which depicted the internal damage done to Elliott that resulted in her death, had probative value that was not substantially outweighed by the danger of unfair prejudice.

**{¶ 32}** Accordingly, the third assignment of error is overruled.

## V.    Conclusion

**{¶ 33}** Mason's first assignment of error being sustained, this matter is reversed and remanded solely for resentencing in accordance with this opinion. The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.