[Cite as *State v. English*, 2014-Ohio-89.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-88 |
| v. | : | (C.P.C. No. 11CR-6153) |
| Quayjuan A. English, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 14, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Richard Cline & Co., LLC*, and *Richard A. Cline*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Quayjuan A. English ("appellant"), appeals from his convictions in the Franklin County Court of Common Pleas of reckless homicide with a firearm specification and tampering with evidence. Because we conclude that the convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, and because appellant was not entitled to a jury instruction on negligent homicide, we affirm.

{¶ 2} This conviction from which this appeal is taken resulted from an unintentional shooting that occurred on the afternoon of July 5, 2011. On that date, appellant and David Rivers ("Rivers"), were among a group of individuals gathered in and around Rivers' car, which was parked in the backyard of Rivers' residence. At one point, while appellant was sitting in the right-side backseat of the car, he was handed a shotgun. There were two individuals seated in the left and right-side front seats of the car, while

Rivers stood near the left-side rear door area and another individual stood near the right-side rear door area. Appellant later testified at trial that, after being handed the shotgun, he began to "mess with" or "flick" the shotgun's hammer. Other witnesses indicated at trial that appellant was swinging the shotgun around while flicking the hammer. While appellant was manipulating the hammer, the shotgun discharged, firing a single shot that struck Rivers in the upper right chest from a distance of approximately two to four feet away. After the shooting, the police were called and medical personnel responded, but Rivers was pronounced dead at the scene.

{¶ 3}   When the police arrived, appellant admitted that he was holding a gun and "pulled back the thing on the top," but claimed that he did not pull the trigger, did not know the gun was loaded, and did not see where Rivers was standing. (Tr. 261.) An individual retrieved a .22 caliber rifle from under the porch of the residence and gave it to one of the officers. Based on the appearance of Rivers' wound, the police doubted that the rifle fired the fatal shot, but they could not locate any other weapons at the time. A neighbor, Thomas Christian ("Christian") told police that he saw an individual throw a gun into his yard. Christian later testified at trial that he told the individual to get the gun out of his yard and that the same person then grabbed the shotgun and ran to the side of his house. Ten days after the shooting, Christian found a shotgun in his cellar area and reported it to the police. At trial, appellant identified the shotgun recovered from Christian's cellar area as the same one that he held while sitting in Rivers' car. An autopsy report indicated that Rivers died as a result of a shotgun wound to his right upper chest area and that shotgun pellets and wadding were recovered from his body near the area of the wound.

{¶ 4}   Appellant was indicted on four charges related to the events of July 5, 2011: involuntary manslaughter (a first-degree felony) with a firearm specification, reckless homicide (a third-degree felony) with a firearm specification, improperly handling firearms in a motor vehicle (a fourth-degree felony), and tampering with evidence (a third-degree felony). Following a jury trial, appellant was convicted of reckless homicide with a firearm specification and tampering with evidence, and found not guilty on the other two charges in the indictment.

{¶ 5}   Appellant appeals from the trial court's judgment imposing sentence on his convictions, assigning three errors for this court's review:

> **Assignment of Error I**: The trial court erred in denying Defendant's Criminal Rule 29 Motion for Acquittal of the Reckless Homicide charge because insufficient evidence existed to show that Defendant acted recklessly. Alternatively, the Reckless Homicide conviction was against the manifest weight of the evidence.
>
> **Assignment of Error II**: The trial court erred in failing to instruct the jury on Negligent Homicide as a lesser included offense of Reckless Homicide with a firearm specification in view of *State v. Deanda*, Slip Opinion No. 2013-Ohio-1722.
>
> **Assignment of Error III**: The conviction of Tampering with Evidence was against the manifest weight of the evidence.

{¶ 6} In appellant's first assignment of error, he argues that the trial court erred in denying his motion under Crim.R. 29 for acquittal on the charge of reckless homicide. He also asserts that his conviction for reckless homicide was against the manifest weight of the evidence. "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.' " *State v. Walburg,* 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 11, quoting *State v. Hernandez,* 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell,* 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith,* 80 Ohio St.3d 89, 102 (1997).

{¶ 7} Appellant's Crim.R. 29 motion related to the charge of reckless homicide in violation of R.C. 2903.041. That statute provides, in relevant part, that "[n]o person shall recklessly cause the death of another." "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless

with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 8}   Appellant argues that no rational trier of fact could conclude that he acted recklessly. Although he concedes that he held the shotgun while sitting in the backseat of the car and that he repeatedly "flicked" the shotgun's hammer, he denies that he pulled the trigger. Appellant denies that he acted recklessly because he did not perversely disregard a known risk that flicking the hammer without pulling the trigger would cause the shotgun to fire. At trial, Amy Amstutz ("Amstutz"), a forensic scientist from the Columbus division of police, testified regarding operability tests she performed on the shotgun. Amstutz testified that she tested what would occur if the hammer was flicked or pulled back and allowed to fall forward before reaching the fully cocked position, without applying pressure to the trigger. She stated that, on two of twenty-five occasions, this caused the shotgun to discharge. Amstutz explained that this was possibly due to worn parts inside the shotgun. Based on these and other tests, Amstutz described the shotgun as having a "sometimes operable hammer safety." (Tr. 348.)

{¶ 9}   Appellant asserts that the state needed to prove that he perversely disregarded a specific, known risk, rather than a general risk that a shotgun could be dangerous. Appellant argues that, without knowledge that this specific shotgun could discharge while manipulating the hammer, but not applying any pressure to the trigger, he could not have disregarded the specific risk the gun posed to those who surrounded him. He argues that no reasonable juror could have concluded that he was aware of the specific risk posed by the "sometimes operable hammer safety" on the shotgun. In support of this argument, appellant cites *State v. Peck*, 172 Ohio App.3d 25, 2007-Ohio-2730 (10th Dist.), and *State v. Martin*, 10th Dist. No. 07AP-362, 2007-Ohio-7152. However, we find these decisions to be distinguishable from the present appeal.

{¶ 10} In *Peck*, this court overturned a reckless homicide conviction, concluding that it was not supported by sufficient evidence. *Peck* at ¶26.  The defendant in *Peck* was a tow truck driver who failed to inspect a "snatch block," used to tow heavy equipment, for its weight capacity before attempting to remove a heavy truck stuck in mud near a freeway. *Id.* at ¶ 4. When he attempted to pull the truck from the mud, the snatch block broke, causing it to crash through the windshield of a passing car and killing the driver.

*Id.* at ¶ 5. This court concluded that because the tow truck driver "did not know the [weight capacity] rating of the snatch block, and because he was unaware of the risk associated with using a snatch block without checking its rating, he was ignorant of the risk that the snatch block would fail" and, therefore, had not acted recklessly. *Id.* at ¶23. Thus, because the tow truck driver did not know of the specific risk that caused the decedent's death, he was not aware of the risk his conduct created and did not act recklessly. *Id.* at ¶25.

{¶ 11} The facts in *Peck* were quite different from the facts of this case. As discussed below, there was some testimony suggesting that appellant may have had his finger on or near the shotgun's trigger. However, even if appellant is correct that he was only flicking the hammer, we conclude that the evidence was sufficient to establish that he perversely disregarded a known risk that his conduct was likely to cause harm. The Supreme Court of Ohio has recognized that "a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death" when fired at an individual. *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). Appellant testified that he did not have any experience with shotguns or any other firearms. He admitted that he did not know whether the shotgun was loaded and did not know how to open it or otherwise determine whether it was loaded. Appellant even testified that, when he was handed the shotgun, he thought "what are they giving me the gun for?" (Tr. 686). Despite this lack of knowledge, appellant admitted that he began "messing with" the hammer of the shotgun. The hammer is part of the firing mechanism of the shotgun.

{¶ 12} At the time that appellant was holding the shotgun, he was sitting in the backseat of the car, and there were two individuals sitting in the front seats, with Rivers standing near the rear of the vehicle on the driver's side and another individual standing near the rear on the passenger's side. Thus, appellant was in close proximity to several other people while he sat flicking the shotgun's hammer. There was also testimony that one of the individuals standing near the car told appellant to move the gun away from him, which should have further alerted appellant to the risk associated with playing with the shotgun. Under these circumstances, while appellant may not have specifically known that the shotgun in his hands had a "sometimes operable hammer safety," it was clear that his actions created a risk of harm to nearby individuals and that appellant perversely disregarded that risk by continuing to play with the shotgun's hammer mechanism. *See*

*State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 14 ("A known risk of handling and manipulating a gun while standing in very close proximity to a child and while pointing it in the direction of that child, without checking the chamber to see if a bullet is still in the firearm, is that the firearm will discharge in the direction of the child, and the bullet will narrowly miss that child.").

{¶ 13} Appellant also cites *Martin* in support of his argument that the state was required to prove that he cocked the shotgun's hammer and pulled the trigger. However, *Martin* involved a very different factual scenario. The defendant in *Martin* was convicted of reckless homicide after his girlfriend was fatally shot. The defendant claimed that the victim had a gun and that it discharged as he tried to take it away from her. *Martin* at ¶ 37. On appeal, this court held that there was sufficient evidence to support the conviction, in part because there was evidence that the gun could not be fired any other way than through application of pressure on the trigger, and it was not more likely than other firearms to discharge unintentionally. *Id.* at ¶ 63. There was also testimony from a forensic pathologist that, based on the fact that the victim was right-handed and the location of her wounds, it was unlikely that the fatal wound was self-inflicted. *Id.* In the present appeal, by contrast, there is no dispute regarding the fact that appellant was holding the shotgun when it discharged. There is also no dispute that appellant was manipulating the shotgun's hammer, which is part of the firing mechanism. Under these circumstances, we conclude that the evidence was sufficient to support a reckless homicide conviction because a rational trier of fact could have found that appellant acted recklessly by perversely disregarding a known risk that manipulating part of the firing mechanism of a possibly loaded firearm posed to those individuals near him. Therefore, the trial court did not err by denying appellant's Crim.R. 29 motion on the reckless homicide charge.

{¶ 14} Appellant's first assignment of error also asserts that his reckless homicide conviction was against the manifest weight of the evidence. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence,

the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 15} Although there was conflicting testimony regarding appellant's handling of the shotgun, we cannot conclude that the jury lost its way in finding appellant guilty of reckless homicide. Appellant admitted that he had no prior experience with guns and did not know if the shotgun was loaded. He testified that he held the shotgun stationary in his lap and merely flicked the hammer, without placing his finger anywhere near the trigger. LaQuan Stepherson ("Stepherson"), who was in the left-side front seat of the car when the shotgun discharged, also testified that appellant was just holding the shotgun and did not have his hand on the trigger. However, Stepherson admitted that he was looking forward when the shotgun discharged and did not see what happened. Additionally, there was other testimony suggesting that appellant was much more careless with the shotgun and disregarded the risk to those around him. Nyrere Pullins ("Pullins"), who was standing near the rear door on the right side of the car when the shotgun discharged, testified that appellant was swinging the shotgun around while holding it. Pullins testified that appellant swung the shotgun in his direction and he told appellant to move it. Pullins stated that appellant then swung the gun in the other direction, where Rivers was standing, and it discharged. Pullins also testified that, while appellant was playing with the shotgun's hammer, he had his finger on the trigger. Pullins described appellant as "playing with the trigger and the hammer, like he didn't – like he was trying to figure out how to shoot it." (Tr. 424.) Tarann Young ("Young"), who was sitting in the right-side front seat of the car when the shotgun discharged, also testified that he heard Pullins tell appellant to watch out or move the shotgun just before it discharged. The autopsy report indicated that Rivers was killed by a shot fired into his right upper chest area from a distance of approximately two to four feet away, suggesting that he likely would have been visible to appellant just beyond the end of the shotgun.

{¶ 16} After reviewing the testimony and evidence presented at trial, we conclude that the jury did not clearly lose its way in finding appellant guilty of the charge of reckless homicide. As explained above, the evidence was sufficient to establish all of the elements of the crime. The jury was able to weigh the evidence and evaluate the credibility of all witnesses, including appellant and Pullins, in reaching its decision. While there was evidence supporting both the state's theory and appellant's theory, this is not an exceptional case where the evidence weighs heavily against conviction.

{¶ 17} Accordingly, we overrule appellant's first assignment of error.

{¶ 18} Next, we turn to appellant's third assignment of error, in which he argues that his conviction for tampering with evidence was against the manifest weight of the evidence. In relevant part, the statute prohibiting tampering with evidence provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). Specifically, the state charged that appellant concealed the shotgun after the shooting occurred.

{¶ 19} There was conflicting testimony at trial as to what happened with the shotgun after it discharged. Appellant testified that, after the shooting, he jumped out of the car and that, when he got out of the car, the shotgun was not in his hands. He testified that he left the shotgun somewhere in or around the car and did not know what happened to it after that. Appellant testified that, when Rivers' girlfriend, Crystal Caldwell ("Caldwell"), came out of the house, he apologized to her and told her the shooting was an accident. However, appellant testified that he did not throw the shotgun over a fence into the neighbor's yard.

{¶ 20} Appellant's account of what happened to the shotgun after the shooting was directly contradicted by testimony from Caldwell and Christian, the individual who lived next door. Consistent with appellant's testimony, Caldwell claimed that, when she asked what happened, appellant apologized. However, contrary to appellant's account, Caldwell further testified that, after apologizing, appellant picked up a gun and threw it over a fence into the neighbor's yard. Christian testified that he went outside after he heard the shooting. He stated that he saw a young black male throw a shotgun over a fence into his backyard. Christian testified that he told the individual to get the gun out of his yard. The

same individual then came into Christian's yard and retrieved the gun. Christian did not positively identify appellant as the individual who threw the gun into his yard, stating that he did not think he would recognize the person who threw the gun if he saw him again. Christian testified that ten days after the shooting, he found a shotgun, which was ultimately established to be the weapon that fired the shot that killed Rivers, in a cellar area at the rear of his house. He called the police, and they came to retrieve the shotgun. One of the police officers who went to recover the shotgun testified that it was located under a wooden board in Christian's cellar area.

{¶ 21} Caldwell was the only witness to identify appellant as the individual who threw the shotgun over the fence. Appellant challenges the credibility of Caldwell's testimony as inconsistent and vague. For instance, appellant argues that, while Caldwell testified she saw him throw the shotgun over the fence, she also testified on cross-examination that she did not hear Christian's request to remove the shotgun from his yard. She also did not testify that she saw appellant walk around the fence or return to the backyard at anytime. Finally, appellant also challenges Caldwell's credibility due to her relationship with Rivers.

{¶ 22} Once again, we cannot conclude that the jury clearly lost its way in convicting appellant of tampering with evidence. The jury was aware of Caldwell's relationship with Rivers and was able to appropriately weigh her credibility in light of that information. "[A]lthough an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility." *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18. The jury could have concluded that, rather than tainting Caldwell's testimony, her relationship with Rivers provided an extra incentive to give a correct account of the events surrounding his death. *See State v. Ruark*, 10th Dist. No. 10AP-50, 2011-Ohio-2225, ¶ 26 ("Appellant also argues that, because Adams was Wolford's fiancée, she was motivated to identify as the shooter whoever was charged with Wolford's murder, regardless of whether that person was guilty or not. The jury could have concluded, however, that Adams' relationship with Wolford provided her an extra incentive to correctly identify his killer."). Moreover, Caldwell's testimony was generally consistent with that of Christian, whom appellant admits was a neutral observer. Although there were some differences between their accounts, such as

whether Caldwell heard Christian tell the individual to get the gun out of his yard and whether Caldwell saw appellant return to the backyard after throwing the shotgun over the fence, this does not mean that their testimony is inconsistent. Caldwell testified that, after appellant apologized and threw the gun over the fence, her attention was focused on Rivers as she tried to put pressure on his wound and waited for paramedics to arrive. Other witnesses testified that there was a lot of commotion and panic after the shooting. The jury could have found this to be a credible explanation for why Caldwell testified that she did not hear Christian or see appellant re-enter the backyard. We cannot find that the jury lost its way in finding Caldwell and Christian's testimony credible and convicting appellant of tampering with evidence. With respect to that charge, this is not a case where the evidence weighs heavily against conviction.

{¶ 23} Accordingly, we overrule appellant's third assignment of error.

{¶ 24} Finally, appellant asserts in his second assignment of error that the trial court erred by failing to give a jury instruction on negligent homicide, which appellant argues is a lesser-included offense of reckless homicide.

{¶ 25} "Trial courts have the responsibility to give all jury instructions that are relevant and necessary in order for the jury to properly weigh the evidence and perform its duty as the fact-finder." *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 51 (10th Dist.). We review a trial court's refusal to give a requested instruction under an abuse-of-discretion standard. *Id.* at ¶ 52. However, "the failure to object at trial or to request a specific instruction waives all but plain error with respect to the jury instructions." *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 11. "Plain error does not exist unless it can be said that but for the error, the outcome of the proceedings would clearly have been otherwise." *State v. Todd*, 10th Dist. No. 06AP-1208, 2007-Ohio-4307, ¶ 22.

{¶ 26} At the close of trial, appellant's counsel did not request a jury instruction on negligent homicide as a lesser-included offense of reckless homicide. In fact, appellant's counsel agreed with the state's assertion that negligent homicide was not a lesser-included offense of reckless homicide. Therefore, we apply the plain-error standard.

{¶ 27} In determining whether a particular offense should be submitted to the jury as a lesser-included offense, a trial court must conduct a two-tiered analysis. *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6. The first tier, also referred to as the

"statutory-elements step," is a legal question requiring the court to determine whether an offense is generally a lesser-included offense of the charged offense. *Id.* The second tier requires an examination of the evidence in the case and a determination of whether a jury could reasonably find the defendant not guilty of the charged offense but convict him of the lesser-included offense. *Id.* Under the statutory-elements step, the court must consider three factors: (1) whether one offense carries a greater penalty than the other; (2) whether some element of the greater offense is not required to prove commission of the lesser offense; and (3) whether the greater offense, as statutorily defined, cannot be committed without the lesser offense, as statutorily defined, also being committed. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, paragraph two of the syllabus. For purposes of analysis in this appeal, we focus on the third factor, i.e., whether the greater offense cannot be committed without the asserted lesser-included offense also being committed.

{¶ 28} Appellant was charged with reckless homicide, which is defined as "recklessly caus[ing] the death of another or the unlawful termination of another's pregnancy." R.C. 2903.041(A). Negligent homicide is defined by statute as "negligently caus[ing] the death of another or the unlawful termination of another's pregnancy by means of a deadly weapon or dangerous ordnance." R.C. 2903.05(A). Because negligent homicide requires the use of a deadly weapon or dangerous ordinance while reckless homicide does not, it is possible for a defendant to have committed reckless homicide without also committing negligent homicide. *See State v. Smith*, 2d Dist. No. 2006 CA 68, 2007-Ohio-2969, ¶ 22 ("[A] person can purposely or recklessly cause the death of another by means other than by a deadly weapon or dangerous ordnance.").

{¶ 29} On appeal, appellant concedes that negligent homicide is not a lesser-included offense of reckless homicide but argues that negligent homicide is a lesser-included offense of reckless homicide with a firearm specification. We reject this argument. As explained above, the analysis of whether one offense is a lesser-included offense of another requires comparison of the *elements* of the two offenses. *See Evans* at paragraph two of the syllabus. The Supreme Court of Ohio has held that a prior conviction specification that enhances the penalty for a subsequent offense but does not elevate the degree of the offense is not an essential element of the subsequent offense. *State v. Allen*, 29 Ohio St.3d 53 (1987), syllabus. *Compare State v. Brooke*, 113 Ohio St.3d 199, 2007-

Ohio-1533, ¶ 8 ("When existence of a prior conviction does not simply enhance the penalty but transforms the crime itself by increasing its degree, the prior conviction is an essential element of the crime and must be proved by the state."). The same reasoning applies to a firearm specification. *See State v. Vann*, 2d Dist. No. 22818, 2009-Ohio-5308, ¶ 12 ("[A] firearm specification is not an element of the predicate offense, and it does not raise the felony level of the offense."). By statute, reckless homicide is a third-degree felony. R.C. 2903.041(B). The associated firearm specification in this case increased the penalty that appellant faced if convicted but did not increase the degree of the predicate offense of reckless homicide. Therefore, the possession and use of a firearm required to establish the firearm specification was not an element of the offense of reckless homicide. Because the firearm specification does not add the element of use of a deadly weapon to the offense of reckless homicide and because appellant concedes that negligent homicide is not a lesser-included offense of reckless homicide, we conclude that the trial court did not commit plain error by refusing to instruct the jury on negligent homicide.

{¶ 30} Accordingly, we overrule appellant's second assignment of error.

{¶ 31} For the foregoing reasons, we overrule appellant's three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and GREY, J., concur.

GREY, J., retired, of the Fourth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____